May it please the Court, Mr. Faulkner, the appellant, has spent the last six years confined to SMU 2 in violation of due process and in cruel and unusual conditions. For six years, Mr. Faulkner has languished in this situation as a result of meaningless reviews despite evidence of any misconduct based solely on a validation that took place six years ago. This case raises the question, among others, of whether continued deference to the ADOC results in adequate due process or whether, given the indefinite and prolonged nature of Mr. Faulkner's confinement, something more is required. The trial court never got to this issue or any others because Faulkner's claims were dismissed as untimely. That decision was erroneous and should be reversed. Ms. Mallody, how do you, on what basis do you contend that the periodic administrative reviews are, in quotes, operative decisions and the products of, in quote, independent consideration within the meaning of R.K. Ventures? In the R.K. Ventures case, the court looked at the issue of whether or not the filing of a notice of abatement proceeding started the statute of limitations running. And in that case, the court determined that it, in fact, did. However, there was another issue in that case that the court considered, and that was, at some point later during those abatement proceedings, the city of Seattle, I believe, had given the bar at issue a settlement offer. And the parties were proceeding under the understanding that that settlement offer was going to resolve the case. But the real issue here, is it not, is whether these subsequent reviews are really independent, complete reviews. The first one, as the record reveals, was a rather complete review of the man's history and all the other elements that went into the decision. It seems, and I'm hoping you're going to be able to give me a correction if this is wrong, that the subsequent reviews are at best perfunctory. That really don't review anything specific at all. Is that correct? Your Honor, I would say that, in practice, that's what's happening. Mr. Faulkner would argue, and I think the position that we've taken in the briefs is that that's not what should be the case. The case should be that. Maybe not what should be the case, but what is the case? These are perfunctory reviews, are they not? Your Honor, they are perfunctory. Again, the way that the Department performs them, because the only issue that they consider is whether or not Mr. Faulkner has debriefed and renounced. However, the issue that the review process is intended to address is whether or not he's still a threat to the prison system and whether or not he should remain in that administrative custody. And so the question that they're really looking at is whether he should remain there. And, in effect, what our position is is that they don't take that into consideration. So you're focusing not so much on the nature of the reviews but just on the nature of things, that there ought to be a new statute running each time there's a review, even though it's not really anything more than a perfunctory review? I guess, Your Honor, if I can clarify, the issue is that the process includes a review, which is required, I think, under Hewitt, for example. The Hewitt court indicated that there needs to be a subsequent review after that inmate is placed in administrative segregation to make sure that the Department hasn't acted arbitrarily, et cetera. And so if that review is in place and if it is, in fact, required, then it should result in some examination of the circumstances under which that particular inmate is placed in the administrative segregation. And at this point, the way that the Department perceives, that's not what is happening. There is no independent or, I'm sorry, let me rephrase that. There are other factors that the Department may consider, but it ignores them because the inmate was validated as a gang member. Counsel, let me ask a question, if I may, just to see if my understanding is right. Each time this review comes up, apparently what the officials are reviewing for is, A, has he renounced the gang, and B, has he agreed to tell a story, you know, to debrief, which some might characterize as snitching or you might characterize it otherwise. And your client's complaint is alleging that to require him to debrief is a constitutional due process violation? In part, Your Honor, I think the bigger issue that my client complains about is the fact that there's no consideration of any other factors other than that one. There could be a wealth of other information that the Department could consider, and it does not. So you're saying they should be considering whether he poses a threat to anyone that requires the special security? Yes, Your Honor. It sort of begs the question of why there's a review process in the first place if nothing is going to be considered, if changed circumstances aren't going to be considered. For example, in this case, he's been there for six years. One has to wonder whether or not during that six-year period, considering there's no evidence in the record that he committed any overt acts, there's no evidence in the record that he's participated in any gang activity whatsoever, no record of escape attempts, nothing along the lines of the types of things that you see in other cases where the courts have perhaps said it makes sense to keep this individual in administrative segregation because they do appear to pose some threat. None of that evidence is considered. Let me ask you to focus, please, for a moment on the other claim he makes. He makes one claim that this review process is a due process violation, and then he makes another claim that the conditions of confinement are an Eighth Amendment violation, and on each of those, you have the issue whether there's a continuing violation that would avoid the statute of limitations. Let's take the Eighth Amendment one for a second. You know, I can imagine if a prison had cells that were filled with rats and broken glass in the bedding, and a prisoner for some reason didn't complain when they first went in there, that someone might say, well, the statute doesn't run and it's a continuing violation. But what are the circumstances here that you think would be a continuing violation? Well, I think, Your Honor, in the context of looking at whether or not the claim has arisen, part of that analysis in the context of an individual who is confined is the question of at what point did those conditions serve to cause harm, or was the inmate in this case on notice of that harm? And under the circumstances, particularly if we look at what's outlined in the briefs, the alleged lack of exercise, adequate food, and lighting issues, to the extent that those conditions were imposed for a period of a week, for example, perhaps this particular inmate or any other inmate would not have a claim that those conditions rose to the level to violate the Eighth Amendment. But the question is under this situation where this person is indefinitely confined and where these conditions have been occurring and are still occurring to this day, at a certain point, again, not at the limited nature of one day or two days, but over that extended period of time, the nature of those conditions changed and the impact was definitely different on the prisoner. But if you're arguing, which I believe you are, that this is a cumulative matter, the longer a client is there, the worse it gets, if you take that argument, aren't you really saying, counsel, that a new statute of limitation begins every day? Again, I think, Your Honor, it depends on – I think you have to consider the nature of the confinement and the – I understand that. And since we have so little time here, I want to be sure I understand your point. There really can't even be a statute of limitations on an Eighth Amendment violation if I understand your argument, because the longer your client is there, the worse it gets, because it's cumulative psychologically. So when does the statute of limitations begin, under your theory? I think, Your Honor, it begins when that particular individual should have known whether or not he or she suffered any – And when is that? I think it's going to depend on – in this case, I think Mr. Faulkner filed his claim when he determined that that was the case. And how long had he been in when he filed that? At that point, I believe it was four years. So you're saying four years – at least by four years the statute runs, not before? At least by four years, Your Honor. Okay. Any later? I think it would, again, depend on the situation. But it's basically the inmate's discretion, basically. The inmate forms a psychological or some point where he just says, I've had enough. This is – I'm on notice here. And that's when it runs? I think, Your Honor, it goes back to the discovery when he knew or should have known standard as opposed to the inmate's subjective decision that the time has run. But really, it is the subjective decision of the inmate, is it not, under your theory? I don't – I don't necessarily think so. I think the consideration the Court would have to take into view the impact of the other circumstances on the inmate. My time is up. Thank you. We'll give you a minute extra for rebuttal. May it please the Court. The question here is twofold. The first question that defendant – I mean, that plaintiff, excuse me, has presented as a due process claim. And that claim, he claims there is no meaningful review. However, the answer to that question, whether or not the defendant has been provided a due process in this case, Your Honor, as you asked, is what review was he entitled to at the time. And he's entitled to, under Hewitt, the opportunity to be present and the opportunity to present evidence. He's had those opportunities each time. What his real complaint is, is the fact that the ADOC policy, which the STG policy that is implemented in order to protect the prison, the prison guards and the public general, that that policy precludes his removal following his status determination. And his status determination is not a question here. He has not raised a question regarding his validation as a member of the AB. The issue is the review of whether he gets out of the status. Right. Correct. And the review of whether he gets out of the status is determined by his ability or willingness at the time he filed this lawsuit to debrief. Subsequent to this, and both parties have acknowledged and placed it in their briefs, subsequent, there is now a new step-down policy in place within the DOC to allow individuals who are unwilling to debrief to work their way out of SMU II, out of that particular facility. Now the step-down policy takes effect after, what, four years? It takes a four-year time frame, Your Honor, in order to work. It's 24 months of being a validated member, and then there's an overlap of 18 months within that, subsequent to that, with an overlap where they have to go through various processes, counseling, psychological counseling, a polygraph, et cetera, those types of things, including in there no activity, no disciplinaries, et cetera, things that the administration, the prison administration, can look at to determine whether or not this individual poses or continues to pose a threat to the facility and to the other prisoners or to the guards. Now, as the United States Supreme Court has stated in UIT, there's no requirement, as Mr. Faulkner would have you make, that additional evidence be presented. This is a periodic review to determine whether or not the prior validation requires that he be kept in this particular facility. Good question. In terms of the theory of what's a continuing violation, what bothers me about this case is that it may be the standard is wrong. He can submit evidence, but nobody has reviewed the standard of due process to address whether it's a due process violation. You require an inmate to debrief to get out of the security area. If that is a due process violation, it might be a continuing violation. Let's say the policy was you can get out, but you have to put a big target on your back that says, I snitched on such and such a gang. Would that comport with due process? For a person who wasn't a threat to someone, if hypothetically a person could have a personality change, they could renounce a gang and not be a threat to anyone. Would it be a due process violation to require them to tell a tale on the other gang members? Well, the question here, Your Honor, is whether or not they are actually telling a tale under our debriefing process. Our debriefing process asks that the inmate provide enough information so as to ensure basically it's a way of determining whether or not that individual inmate is in reality truly debriefing, whether he's truly renouncing his gang membership, because his status as a gang member is what poses danger to the community. Let's say the Aryan Nation gang was aware of the nature of the debriefing that's given. Do you think they would retaliate? Are you saying in good can you say in good faith that if aware of the nature of the debriefing that this gang or some other gang would not try to terminate the guy? Your Honor, with respect to whether or not a gang member or another member of the Aryan Brotherhood would attempt that, given the nature of the debriefing, that fails to take into account what other purposes the debriefing has at its serve. That's kind of a merits question. That's correct, Your Honor. Whether it violates due process. And I'm not saying it does. The question I'm raising is, if it might be a due process violation, then do we have to consider it as a continuing violation? Because otherwise it's unreviewable. No, Your Honor. You don't look at it as a continuing violation. And the reason being is under Hewitt, he has gotten the process that the Supreme Court says he is required to have. The question he complains about is the overriding policy, which for purposes of statute of limitations, he has been aware of since November of 2000. He has been aware since his first classification review that there is this overriding policy, and thus the accrual or the knowledge that counsel has complained of occurred in 2000. He did not bring his appeal. So if he didn't challenge it within, what's the statute of limitations, two years? Two years in Arizona, yes, Your Honor. If he didn't challenge that policy within two years, then he can never challenge it. That's correct, Your Honor. A Hotel California can check in, but he can never leave, right? Your Honor, looking at that analogy, I guess you would be correct. But the other alternative is we have an individual who then substantively knows of this alleged rights violation. He knows of it for years on end until he determines it's in his best interest to attack it. He will then come in and attack it. And then we have a perpetuation in the courts that obviously the statute of limitations is there to preclude. Take my hypothetical, and I'm not – it may be it's not a continuing violation. Take my hypothetical on the Eighth Amendment issue. If you had a cell – if you had a prison where in this special unit the cells had rats and had lots of broken glass, but yet an inmate hadn't challenged it within two years, wouldn't confining them in that condition still be a continuing violation? Your Honor, that is a question that I think this Court will eventually address. But for purposes of this case, if I could, I would want to point out that Mr. Faulkner has not proven any Eighth Amendment violation whatsoever, because he has not proven either of the two prongs that are required under Farmer. He has not proven deliberate indifference, and he has not proven that the conditions of its confinement. He hasn't really had a chance on his Eighth Amendment claim to have the district judge address it on the merits, because it's precluded by the statute of limitations. That is correct, Your Honor. However, that does not preclude this Court, considering the fact that the merits have been fully addressed in the motions for summary judgment, from looking at the motion for summary judgment and determining whether or not Mr. Faulkner has actually met his burden of proof. And the defendants admit that he has not met his burden. You know, I took up more of your time than I should have, and there are three judges here, so we're going to add a couple of minutes to your time so you can cover other points that you have. I want to follow up on your Hotel California analogy, because in this case, they have not only not had that spirit there since 1969, they have never had it. It really is bad. I want to follow up on the question that I asked your opposing counsel on connection with the Eighth Amendment issue. We talked a little bit about when an Eighth Amendment claim, if there is one, exists, or when does it commence. I would be interested in the State's perspective on this. Do you agree that an Eighth Amendment violation here is a cumulative matter? The longer you're in there, the worse it gets? No, Your Honor, I do not, because I do not first agree that there is any Eighth Amendment violations here in the facility. Hypothetically. Just arguendo here. We're going to just assume for a moment that we would ultimately get to that. But we're just talking about, for purposes of the statute of limitations, when does an Eighth Amendment claim, if there were one, when does it commence? Your Honor, an Eighth Amendment claim commences first when there is a violation, which is the first level you have to reach. Right. And second, when the violation requires, is twofold for an Eighth Amendment. One, that the conditions of confinement are cruel and unusual, and two, that the defendants were deliberately indifferent to their, to the inmates' health and well-being in this case. So is the State saying that when that two-prong test is met, that at that moment, that's when the statute of limitation runs or starts? I would suggest yes, Your Honor, because in this case, you cannot have an Eighth Amendment violation unless the plaintiff can show that the defendants in this case knew of the risk of substantial harm to him. And in this case, there is no risk of substantial harm. He has not proven, first of all, that there has been any violation or that he's been denied any of life's basic necessities. He has shelter. He has an ability to sleep. He has exercise, and it's outdoors. He has food. But you're getting to the merits of the claim, and I'm trying to follow up on Judge Gould's question of he hasn't really had a chance to prove that one way or another. Admittedly, there are some pleadings here, but he was dismissed based upon the statute of limitations. I'm trying to understand the State's perspective as to when the statute of limitations begins on this. We know when it ends if we know when it starts, but we need to know when it begins. And the State's perspective, as I understand it, is when those two prongs exist, it commences. And is it based upon an objective criteria, set of criteria, or is it what the prisoner thinks in this case? I believe it has to be objective, Your Honor, because if you have a subjective in what the prisoner thinks, there's no telling when this violation starts. And then there's no end. It's a continuation that proceeds that doesn't allow the State to act or the State agents to act. This eliminates the statute of limitations. Exactly, Your Honor. It results in that kind of situation. I have no further questions. Unless Judge Covello has a question, then I guess we've had to go over your time, but with our questions taking you there. Thank you, Your Honor. And if I can just close, for the reasons stated in the brief and for the reasons stated here today, I ask that the Court affirm the district court's dismissal of this matter. Thank you. Briefly, Your Honor, just a couple of clarification points in response to opposing counsel. The first is the just so the Court understands the step-down program that she spoke about comes into play four years after an inmate has been in the program, at least according to the department guidelines at 806.08, which is in the appendix. Second, the debriefing process that you asked about and that was described was suggested that it was an adequate process. And the question that Mr. Faulkner poses and raised and discussed in his brief is what if, even if you have appealed the validation process and you're in indefinite confinement, you can't renounce or debrief because you don't have the information that you can give to the department that would allow them to conclude that you're no longer a threat. And so that's, in part, where Mr. Faulkner comes down in terms of why that renounce and debrief requirement doesn't meet the necessary level of due process for that secondary review. Thirdly, there was a discussion of when Mr. Faulkner became aware of that policy, and certainly he became aware of it in 2000 when he was placed into administrative segregation. However, that policy, to the extent that it's unconstitutional, which is obviously a question for the Court, but to the extent that it is, when it's implemented against him at each subsequent review hearing, that results in a violation that, again, gives rise to the statute of limitations. Okay. I appreciate your rebuttal. I think time is up. This is a very challenging case, so thank you. Thank you, Your Honor. Thank you both. Okay. Faulkner shall be submitted.
judges: Gould, Smith, Covello